

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
APR 0 7 2008
Apr 7, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 08 CR 126 |
| ) | Judge Suzanne B. Conlon |
| GREGORY B. SAMS ) | |

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, GREGORY B. SAMS, and his attorney, JAMES MARCUS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 126.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant, GREGORY B. SAMS, and his attorney,

1

JAMES MARCUS, have agreed upon the following:

1. Defendant acknowledges that he has been charged in the indictment in this case making a false claim to an agency of the United States in violation of Title 18, United States Code, Section 287 (Counts One - Ten), filing a false Federal income tax return in violation of Title 26, United States Code, Section 7206(2) (Counts Eleven - Twelve), and failing to file a tax return in violation of Title 26, United States Code, Section 7203 (Count Thirteen).

2. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crimes with which he has been charged.

4. Defendant will enter a voluntary plea of guilty to Counts One, Eleven, Twelve, and Thirteen of the indictment in this case.

5. Defendant will plead guilty because he is in fact guilty of the charges contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt and all relevant sentencing facts beyond a reasonable doubt:

**Count One – False Claims**

Between 2003 and 2006, defendant GREGORY B. SAMS held himself out as an income tax preparer associated with the tax business operation known as GBS & Associates, located at 1555 N. Naperville-Wheaton Road, Naperville, Illinois (the "tax business").

Defendant's services included preparing federal income tax returns and filing those returns on behalf of individual taxpayers. While preparing federal income tax returns at the tax business, defendant GREGORY B. SAMS held himself out to clients as a person trained in and knowledgeable about the preparation and filing of Federal Income Tax Returns.

For tax years 2002 through 2005, GREGORY B. SAMS prepared at least approximately 224 returns on behalf of approximately 131 clients. Upon completing the returns, GREGORY SAMS gave a copy of the returns to his clients and advised these clients that he would electronically file the returns for them. In each instance, unbeknownst to his clients, GREGORY B. SAMS, altered the client's Federal Income Tax return to fraudulently increase the amount of Schedule A deductions in order to inflate the refunds paid by the Internal Revenue Service ("IRS") after he provided a copy of the tax returns to his clients. On each of those altered returns, GREGORY B. SAMS fraudulently inflated existing deductions and fabricated fraudulent claimed deductions including false charitable contributions and unreimbursed job expenses, which he then filed with the IRS. On each of those returns, GREGORY B. SAMS without his client's knowledge, requested the IRS to electronically deposit the client's tax refund into the tax business's bank account. Upon receipt of the IRS refunds, GREGORY B. SAMS deposited a portion of the refunds into his clients' bank accounts and retained the balance without the clients' knowledge.

In the course of the scheme, between 2003 and 2006, the IRS electronically deposited refunds in the amount of approximately $1,463,191 into defendant's tax business bank

account, based upon falsely claimed deductions totaling at least $458,037, that the defendant filed in the names of his taxpayer clients. In furtherance of this scheme, the defendant retained at least $458,037 and transferred the remaining balance of the refunds to his clients. In furtherance of this scheme, on March 24, 2004, GREGORY B. SAMS made and presented to the IRS, an agency of the United States Treasury, a claim upon the IRS, namely an electronically filed individual income tax return in the name of Taxpayer AB which claimed a federal income tax refund of approximately $18,550 for tax year 2003 based upon a falsely inflated charitable contribution deduction and a false and inflated unreimbursed business expense deduction. More specifically, defendant falsely represented and stated on said return that: (a) On Schedule A, line 18, that Taxpayer AB made charitable contributions totaling $11,725, when in truth and fact Taxpayer AB had made no charitable contributions in that tax year; (b) On Schedule A, line 26, that Taxpayer AB had an unreimbursed business expense deduction totaling $11,948, when in truth and fact Taxpayer AB had no unreimbursed job expenses in that tax year; and (c) On Form 1040, line 69, that Taxpayer AB had overpaid his/her federal taxes in the amount of $18,550, and that he/she was entitled to that amount in a refund, when in truth and fact Taxpayer AB had overpaid his/her federal taxes in the amount of approximately $13,530, and that he/she was entitled to that amount in a refund. Defendant knowingly and wilfully caused each of these false statements to be made on a return which he caused to be filed with the IRS and which generated a refund in the amount of approximately $5,020 to which neither SAMS nor the client were entitled.

Defendant admits that his conduct resulted in a loss to the United States Treasury of at least $458,037.

**Count Eleven – False Return**

On October 13, 2005, GREGORY B. SAMS, a resident of Naperville, Illinois, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments) for the calendar year 2003, which return was verified by a written declaration that it was made under penalties of perjury, and was filed with the Internal Revenue Service. Defendant knew when he made and subscribed to this return, that such return contained false statements with respect to material matters, to wit: defendant falsely reported on Line 22 that his total income for that calendar year was $124; whereas, he knew and believed that his income exceeded $124, in that he failed to include additional income of at least $42,189 he received in 2003 from refunds he obtained from the United States Treasury in the name of clients of his tax preparation business, GBS & Associates. For 2003, defendant admits that his conduct resulted in a federal tax loss of $11,848, a state tax loss of $1,269, and a total tax loss of $13,117.

**Count Twelve – False Return**

On October 13, 2005, GREGORY B. SAMS, a resident of Naperville, Illinois, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments) for the calendar year 2004, which return was verified by a written declaration that it was made under penalties of perjury, and was filed with the Internal

Revenue Service. Defendant knew when he made and subscribed to this return, that such return contained false statements with respect to material matters, to wit: defendant falsely reported on Line 22 that his total income for that calendar year was $24; whereas, he knew and believed that his income exceeded $24, in that he failed to include additional income of at least $118,787 he received in 2004 from refunds he obtained from the United States Treasury in the name of clients of his tax preparation business, GBS & Associates. For 2003, defendant admits that his conduct resulted in a federal tax loss of $33,260, a state tax loss of $3,564, and a total tax loss of $36,824.

**Count Thirteen – Failure to File Return**

During calendar year 2005, GREGORY B. SAMS, a resident of Naperville, Illinois, who had and received gross income of at least $204,486 from the operation of his tax preparation business, GBS & Associates, and knowing that by reason of such income he was required to make and file an individual income tax return specifically stating the items of his gross income and any deductions and credits to which he was entitled. Despite knowing these facts, defendant willfully failed to make and file such a return. For 2005, defendant admits that his conduct resulted in a federal tax loss of $56,976, a state tax loss of $6,105, and a total tax loss of $63,081.

6. For purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, the parties agree that the Guidelines effective November 1, 2007 apply. The parties further agree on the

following points:

### Count One - False Claims Against the U.S. Treasury

a.  The base offense level for Count One is 20 pursuant to Guideline 2T1.4(H) to reflect a loss of $ $458,037, which is more than $400,000 but less than $1,000,000.

b.  The base offense level is increased by 2 levels pursuant to Guideline 2T1.4(b)(1) because the defendant was in the business of preparing or assisting in the preparation of tax returns.

### Count Eleven, Twelve, and Thirteen - False Personal Tax Returns

d.  The base offense level for Counts Eleven, Twelve, and Thirteen is 16 pursuant to Guideline 2T1.1(a)(1) and 2T4.1(16) which reflects a total tax loss of $112,984.

e.  The base offense level is increased by 2 levels pursuant to Guideline 2T1.1(b)(1) because the defendant failed to report or correctly identify the source of income exceeding $10,000 in any year from criminal activity.

f.  Pursuant to Guideline §3D1.1 and 3D1.2, the counts of conviction are grouped together into a single group.

g.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for his actions, within the meaning of Guideline §3E1.1, a 2 level reduction in the offense level is appropriate.

    h.    Defendant has provided timely complete information concerning his own involvement in the offense, timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently, within the meaning of Guideline 3E1.1(b); an additional one-point reduction in the offense level is therefore appropriate, provided the Court determines the offense level to be 16 or greater prior to the operation of Guideline 3E1.1(a).

    l.    On or about January 7, 2003, defendant was convicted of theft from person in the Circuit Court of DuPage County, Illinois, Case No.02 CF 172801, and was sentenced to 2 years imprisonment. Pursuant to Guidelines sections 4A1.1(a),(d), and (e), he receives 6 criminal history points for this conviction.

    j.    On or about May 20, 1999, defendant was convicted of deceptive practices in the Circuit Court of DuPage County in case 98 CF628, and sentenced to 3 years imprisonment. Pursuant to Guidelines sections 4A1.1(a), he receives 3 criminal history points for this conviction.

    j.    On or about July 1, 1999, defendant was convicted of felony theft in the Circuit Court of Lake County Case No 98 CF 3170, and sentenced to 4 years imprisonment. Pursuant to Guideline section 4A1.1(a), he receives 3 criminal history points for this conviction.

    k.    On or about May 20, 1999, the defendant was convicted of the offenses of forgery and theft in the Circuit Court of Cook County Case No 97 CR 173301, and sentenced

8

to 48 months probation. On May 20, 1999, defendant admitted violating his probation and was sentenced to serve 3 years custody in the Illinois department of corrections to run concurrent with 98 CF 628. Pursuant to Guidelines sections 4A1.1(a), (c), and 4A1.2(k) he receives 3 criminal history points for this conviction.

      m.    Based upon the facts known to the government and the defendant, the defendant's criminal history category is VI, his adjusted offense level is 19 and his projected guideline range is 63-78 months.

      n.    Defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Agreement. The defendant understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

      o.    Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw his plea on the basis of such corrections.

7. Defendant understands that, in imposing sentence, the Court will be guided by the United States Sentencing Guidelines. The defendant understands that the Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

8. Defendant understands the counts to which he will plead guilty carry the following penalties:

(a) Count One carries a maximum penalty of five years imprisonment, a maximum fine of $250,000, or a fine of not more than twice the amount of the gross gain to the defendant or twice the amount of the gross loss to the victim, whichever is greater, any restitution ordered by the Court.

(b) Counts Eleven and Twelve each carry a maximum penalty of three years imprisonment and a maximum fine of $250,000, any restitution ordered by the Court, and costs of prosecution.

(c) Count Thirteen carries a maximum penalty of one year imprisonment, a maximum fine of $250,000, any restitution ordered by the Court, and costs of prosecution.

(d) Defendant understands these counts also carry a term of supervised release of not more than three years on Count One and not more than one year on Counts Eleven, Twelve and Thirteen, which the Court may specify.

Therefore, the total potential sentence carried under the counts to which defendant will plead guilty is 16 years imprisonment, a fine of $1,666,074, a term of supervised release,

together with costs of prosecution, estimated to be $500.

9. Defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, defendant will be assessed $100 on the felony counts to which he has pled guilty and $25 on the misdemeanor count to which he has pled guilty, in addition to any other penalty imposed. Defendant agrees to pay the special assessment of $325 at the time of sentencing with a check or money order made payable to the Clerk of the U. S. District Court.

10. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

   a. If defendant persisted in a plea of not guilty to the charge against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it

could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

d. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

e. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

11. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the

consequences of his waiver of those rights. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and only may appeal the validity of this plea of guilty or the sentence.

12. Defendant understands that the information and this Plea Agreement are matters of public record and may be disclosed to any party.

13. Nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from the defendant. Defendant further understands that the amount of tax as calculated by the Internal Revenue Service may exceed the amount of tax due as calculated for the criminal case.

(a) Defendant agrees to transmit his original records, or copies thereof, and any additional books and records which may be helpful, to the Examination Division of the Internal Revenue Service so that the Internal Revenue Service can complete its civil audit of defendant, his businesses, and his clients, for the years 2002 through 2005.

(b) Preliminary to or in connection with any judicial proceeding, as that term is used in F.R.Cr. P. 6(e), defendant will interpose no objection to the entry of an order under Rule 6(e) authorizing disclosure of those documents, testimony and related investigative materials which may constitute grand jury material. Defendant will not object to the government soliciting consent from third parties, who provided information to the grand jury pursuant to grand jury subpoena, to turn those materials over to the Civil Division, appropriate federal or state administrative agency or the Internal Revenue Service, for use in

civil or administrative proceedings or investigations, rather than returning them to such third party for later summons or subpoena in connection with the civil case or collection of taxes from defendant.

14. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

15. At the time of sentencing, the parties are free to recommend any sentence they deem appropriate.

16. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement, may impose the maximum penalties set forth in paragraph 9 above. However, the sentencing court is obligated to consult and take into account the sentencing guidelines.

17. Pursuant to Title 18, United States Code, Section 3663(c), defendant agrees to pay restitution in the amount of $660,121 to the United States Treasury for the losses of caused by the offenses of conviction. Defendant understands that Title 18, United States Code, Section 3664 and Section 5E1.1 and 5E1.2 of the Sentencing Guidelines set forth the factors to be weighed in setting a fine and in determining the schedule, if any, according to which the restitution is to be paid in this case. Defendant agrees to provide full and truthful information to the Court and the United States Probation Officer regarding all details of his

economic circumstances, including all tax returns and related information as may be requested, in order to determine the manner in which and the schedule according to which restitution is to be paid. Furthermore, defendant understands that he is required to notify the Court and the United States Attorney's Office of any material changes in his economic circumstances that might affect his ability to pay restitution. Defendant understands that providing false or incomplete information may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the court.

18. Defendant understands that his compliance with each part of this Plea Agreement extends throughout and beyond the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. He further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Agreement, or to resentence the defendant. The defendant understands and agrees that in the event that this Plea Agreement is breached by the defendant, and the Government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

19. Defendant and his attorney acknowledge that no threats, promises, or

representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

20. Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

21. Should the Court refuse to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

22. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: April 7, 2008

_____  
PATRICK J. FITZGERALD  
United States Attorney

_____  
PATRICK J. KING, JR.  
Assistant United States Attorney

_____  
GREGORY B. SAMS  
Defendant

_____  
JAMES MARCUS  
Attorney for Defendant

16